UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 16-2719 DSF (SKx) | Date | 7/25/17 |
| Title | Graciela Herrera, et al. v. City of Los Angeles, et al. | | |

| | |
|---|---|
| Present: The Honorable | DALE S. FISCHER, United States District Judge |

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING IN PART and DENYING IN PART Defendants' Motion for Summary Judgment (Dkt. 60)

## I.   INTRODUCTION

Defendant Alejandro Downey, an officer employed by Defendant City of Los Angeles (City), shot and killed Ruben Herrera, the son of Plaintiffs Graciela Herrera and Ruben Ordaz.  First Am. Compl. (FAC) ¶¶ 3-4, 6.  In their FAC, Plaintiffs bring section 1983 claims based on false arrest, excessive force, and violation of substantive due process against Downey, a Monell claim against the City, and battery, negligence and Bane Act claims against both Defendants.[1]  Defendants move for summary judgment on Plaintiffs' excessive force, substantive due process, Monell, battery, negligence, and Bane Act claims.[2]  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.

---

[1] Plaintiffs bring their claims in their individual capacities and in their representative capacities as successor-in-interest to their deceased son.

[2] Defendants assert Plaintiffs have agreed to dismiss their false arrest claim.  Notice of Mot.  Plaintiffs do not dispute this assertion.  Nor do they discuss this claim in their opposition.  Plaintiffs' false arrest claim is dismissed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**II.  LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "This burden is not a light one."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).  But the moving party need not disprove the opposing party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial.  Id. at 323-24; Fed. R. Civ. P. 56(c)(1).  A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment.  See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party.  Id. at 250-51.  "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment.  Harper v. Wallingford, 877 F.2d 728, 731 (9th Cir. 1989).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ."  Anderson, 477 U.S. at 252.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues."  Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992).  "A district court's ruling on a motion for summary judgment may only be based on admissible evidence."  Oracle, 627 F.3d at 385.  A party seeking to admit evidence bears the burden of proof to show its admissibility.  Id.  Courts need not scour the record to determine if evidence is admissible.  Id. at 385-86.  If an opposing party objects to the admissibility of proffered evidence, the onus is on the proponent to direct the Court to the documents and evidentiary principles that it claims make the evidence admissible.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

### III. FACTS[3]

On the morning of December 19, 2015, Downey and Officer Adragna, who were on patrol, received a call to assist an officer. Pls.' Response to Defs.' Undisputed Facts (PRUF) 1. By the time they arrived on the scene, several officers had already arrived and secured the area. Id. 3. Ruben Herrera was already handcuffed and under arrest. Id. 4. Because a carotid restraint was used on Herrera[4] during the arrest, he was taken to the hospital to obtain medical clearance. Id. 8. For about five-and-a-half hours, Downey and Adragna watched over Herrera during the medical evaluation. Id. 13. Except for during a CT scan and restroom breaks, Herrera had both his hands cuffed to the gurney. Id. 15. Herrera was cooperative during the medical evaluation, including the CT scan and restroom breaks. Id. 20. Herrera was medically cleared for booking, and the officers began uncuffing him for transport. Id. 21-23. The parties dispute what happened next.

According to Defendants, once Adragna uncuffed Herrera, he got off the bed and stood up, ignoring the officers' instruction to get back on the bed. Defs.' Undisputed Facts (DUF) 26-28. He then picked up a metal stool and threw it at Downey, who was hit on his left hand. Id. 29. The officers backed up and drew their tasers, ordering Herrera to stop. Id. 30-31. When Herrera charged at Adragna, the officers hit him with their tasers in dart mode. Id. 33. Herrera nevertheless tackled Adragna, who landed in the hallway under him. Id. 34-35. The two of them grappled as the officers struggled to restrain Herrera. Id. 35. Herrera was on Adragna's legs and reaching for Adragna's waist; Adragna attempted to free his legs. Id. 36. Meanwhile, Downey fired his taser four times at Herrera, who continued his assault. Id. 37. The officers got him face down on the ground and tried to restrain his arms. Id. 38. Herrera was able to free himself and stand up, even after Downey had kicked him in the head and stomped on his hand. Id. 39.

After standing up, he again attacked the officers. Id. 40. The officers took Herrera down to the ground again. Id. 41. From a supine position, Herrera kicked Adragna in the chest, knocking the wind out of him and causing him to fall to the floor. Id. 42. Herrera and Adragna continued grappling. Id. 43. Then, from a prone position and by the legs of Adragna - who was on his back, Herrera attempted to grab Adragna's gun; Adragna

---

[3] The following facts are undisputed unless otherwise indicated. The Court notes that both counsel sometimes assert that a fact is undisputed, but fail to dispute the fact directly, contrary to this Court's standing order. Where this occurs, the Court deems the fact to be undisputed.
[4] All references to "Herrera" are to Ruben Herrera.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

evaded this attempt by turning and trying to scoot away. Id. 45-46, 48. Herrera then came off Adragna's lower legs, started to sit up, and turned and reached for Downey's gun belt. Id. 53. Downey moved his gun leg back and tried to push Herrera back down. Id. 55. Downey drew his firearm; Herrera reached out and touched the barrel of the gun after it was unholstered. Id. 57. Downey twice yelled "stop or I'll shoot," but Herrera did not stop. Id. 58. Downey then fired one round, hitting Herrera in the back. Id. 59. When the shot was fired, Herrera was not touching the gun, though he was grabbing at Downey's waistband. Id. 60-61.

Plaintiffs submit testimony from third-party witnesses that supports a significantly different sequence of events. Picking up from Herrera's medical clearance, on being released from his handcuffs, Herrera complied with the officers' request to stand up and face the wall. Pls.' Additional Facts (PAF) 77. Herrera then tried to run out of the hospital room, pushing officers Adragna and Downey out of his way. Id. 78. Before exiting the room, Herrera was tased; he then fell face down onto the floor. Id. 78-79. After he went to the ground, the officers got on top of him and tased him in the neck multiple times. Id. 82. Although Herrera tried to get up, he never attempted to grab the officers' guns or waistbands. Id. 85. He never tackled or struck the officers and never got back on his feet after going to the ground. Id. 86-87. Adragna got off Herrera and stood a couple feet away from him moments before the shooting occurred. Id. 91.

Downey drew his gun, pointed the tip of the gun at Herrera's back, and fired - without warning - from two-and-a-half feet away; Herrera was lying prone on the floor using his hands and forearms to get up from the ground when the shot was fired. Id. 92-95, 97. Plaintiffs' evidence indicates that, at the time of the shooting, Downey was on his feet over Herrera, who appeared to be trying to escape. See Opp., Valenzuela Decl., Ex. M (Burbulys Dep.) at 89:8-11, 95: 1-6; id., Ex. X (Lim Statement) at 24:11-12; id., Ex. A1 (Ahumada Statement) at 22:24-23:12 (Dkt. 79-27). Plaintiffs also submit evidence showing (1) a lack of gunshot residue on Herrera's hands and clothing indicating he was at least several feet away from Downey when shot and (2) a "shored exit" bullet wound consistent with Herrera being on the floor during the shooting. PRUF 59; PAF 93.

It is undisputed that (1) Herrera never had weapons - or objects that looked like weapons - in his hands, (2) Herrera never attempted to assault the medical staff, and (3) Adragna never pulled his gun out of the holster. Id. 98, 100, 103. The parties dispute whether - at the initial scene before Adragna and Downey arrived - Herrera attacked officers and reached for their guns. PRUF 6-7. They also dispute whether Herrera was

on methamphetamine and whether Adragna and Downey knew of Herrera's bipolar disorder.  Id. 18-19.

## IV.  DISCUSSION

### A.  Evidentiary Objections

Defendants seek to exclude the third-party witness testimony and statements submitted by Plaintiffs on the grounds of hearsay.  Defs. Reply to PRUF.  "At the summary judgment stage, [the Court] does not focus on the admissibility of the evidence's form.  [The Court] instead focus[es] on the admissibility of its contents." Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  These witnesses could take the stand at trial and recount what they saw and heard at the hospital.  This evidence would be relevant and admissible.  Because the evidence could be presented in an admissible form at trial, the Court may consider this evidence at the summary judgment stage.  Id. at 1037 (citing Hughes v. United States, 953 F.2d 531, 543 (9th Cir.1992) (affidavit could be considered on summary judgment despite hearsay and best evidence rule objections because the facts underlying the affidavit were of the type that would be admissible evidence, even though the affidavit itself might not be admissible); J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990) (hearsay evidence produced in an affidavit may be considered if the out-of-court declarant could later present the evidence through direct testimony)).  Defendants' objections are overruled.[5]

### B.  Excessive Force

In excessive force cases, the right at issue is the Fourth Amendment right against unreasonable seizures.  Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014).  "[U]nlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits." Scott v. Henrich, 39 F.3d 912, 914-15 (9th Cir. 1994) (internal punctuation and citations omitted).

---

[5] Some witnesses' statements were not made under oath.  Considering that these statements were taken by police officers, the Court concludes that it can consider them.  Even if the Court did not consider them, its ruling would be the same.  Defendants also object to statements in Plaintiffs' expert's declaration.  Defs.' Req. for Evidentiary Ruling on Specified Objs.  Because the Court does not rely on these statements, the Court declines to address these objections.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

  The court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tolan, 134 S. Ct. at 1865-66 (citing Tennessee v. Garner, 471 U.S. 1, 8 (1985)). "[P]roper application [of the test of reasonableness under the Fourth Amendment] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). The most important *Graham* factor is "whether the suspect poses an immediate threat to the safety of the officers or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005) (en banc).

  "[E]ven though reasonableness traditionally is a question of fact for the jury, defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." Scott, 39 F.3d at 915 (internal punctuation and citations omitted). On the other hand, where the reasonableness of the officer's conduct turns on disputed issues of material fact, the question should be left for the jury. Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011).

  Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and includes "allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 396-397. Deadly force is not unreasonable, and therefore, not a violation of an individual's Fourth Amendment rights, when the "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." Garner, 471 U.S. at 11.

  Defendants assert Downey is entitled to qualified immunity with respect to the section 1983 claims. Qualified immunity is more than a mere defense at trial; it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Because the benefit of immunity is effectively lost if the case erroneously goes to trial, the Supreme Court repeatedly has stressed the importance of resolving immunity questions at the earliest possible stage of the litigation. Saucier v. Katz, 533 U.S. 194, 200-01 (2001). At the summary judgment stage, courts engage in a two-prong inquiry. Tolan, 134 S. Ct. at 1865. First, viewing the facts in the light most favorable to the plaintiff, the court determines whether the officers' conduct violated a

federal right.  Id.  Second, the court determines whether the right was "clearly established" at the time the violation occurred.  Id. at 1866.  The court may engage the two prongs of the qualified immunity test in either order, but it must limit its examination to undisputed facts.  Id.

1.  **Violation of the Fourth Amendment**

Defendants contend that, based on the totality of the circumstances, it was objectively reasonable for Downey to perceive that Herrera posed an imminent deadly threat.  Defendants argue Downey, who believed Herrera had tried to take a gun from an officer at the initial scene,[6] and his partner Adragna were repeatedly attacked by Herrera, who failed to comply with officer commands and attempted to grab their weapons.  Defendants rely on Davenport v. Causey, 521 F.3d 544 (6th Cir. 2008) and Colston v. Barnhart, 130 F.3d 96 (5th Cir. 1997).  In Davenport, the Sixth Circuit found no Fourth Amendment violation where a "large, violent, and angry" suspect had knocked an officer to the ground and was pummeling his partner in the head when the officer shot him.  Davenport, 521 F.3d at 553-54.  In Colston, the suspect, after having knocked down one officer and rendering another officer unconscious, stood over the officers and started walking toward a police vehicle containing a shotgun when he was shot.  Colston, 130 F.3d at 98.  The Fifth Circuit found reasonable the shooting officer's belief that the suspect would further assault him or obtain a weapon from the vehicle.  Id. at 99-100.

Here, Plaintiffs have presented evidence that Herrera had no weapons (and did not try to take one from the officers), never tackled or struck the officers, and was trying to get up from a facedown position when he was shot.[7]  Further, it is undisputed that he never attacked hospital staff.  This case, therefore, is unlike Davenport or Colston where there was no such dispute of material fact.  When viewing this evidence in the light most favorable to Plaintiffs, a reasonable jury could disbelieve Downey's version of events and

---

[6] Plaintiffs object to Downey's testimony on hearsay and relevance grounds.  The objections are overruled.  The testimony is not hearsay as it is offered to show Downey's state of mind and it is relevant to the objective reasonableness inquiry.

[7] The third-party witnesses, whose testimony Plaintiffs submit, did not attest merely that they do not recall Herrera's actions, as Defendants suggest, Reply at 3, but rather characterized - to the best of their recollection - the events they personally witnessed.  That witnesses relied on by Defendants may have more comprehensive and reliable testimony than Plaintiffs' witnesses goes to the weight the jury may accord the evidence.  Such arguments are irrelevant for this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

find Downey did not have cause to believe Herrera posed a threat of serious physical harm to himself or anyone else. Because there is a triable issue as to the reasonableness of Downey's use of deadly force, the Court cannot conclude as a matter of law that Downey did not violate the Fourth Amendment.

### 2. **"Clearly Established Right"**

Defendants contend that even if Downey violated the Fourth Amendment, he is still entitled to qualified immunity because the alleged right was not clearly established. Defendants' reliance on Davenport and Colston is misplaced for the same reasons discussed above. The Supreme Court long ago made clear that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others. Garner, 471 U.S. at 11. It appears that, even accepting Plaintiffs' version of events, Herrera was struggling to escape. But given the conflicting evidence, a reasonable jury could conclude that Downey violated Herrera's Fourth Amendment rights by shooting him though he posed no significant threat to the officer or others. In that case, the violation would be clearly established under the law set forth in Garner and numerous other cases governing the use of deadly force to effect a seizure of a suspect. Though it is arguably a close issue, the Court concludes that summary judgment on qualified immunity as to Plaintiffs' Fourth Amendment claim is not warranted. Defendants' motion as to Plaintiffs' excessive force claim is denied.

### C. **Substantive Due Process**

"[E]xisting Supreme Court and Ninth Circuit precedent establish that a parent has a constitutionally protected liberty interest in the companionship and society of his or her child. The state's interference with that liberty interest without due process of law is remediable under section 1983." Kelson v. City of Springfield, 767 F.2d 651, 655 (9th Cir. 1985). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).

In considering a section 1983 violation based on substantive due process, a court applies either a "deliberate indifference" standard or a "purpose to harm" standard. Id. The "deliberate indifference" standard applies only where "actual deliberation [by the officer] is practical." Id. (quoting Lewis, 523 U.S. at 851). The "purpose to harm" standard applies where an officer faces a situation "that escalate[s] so quickly that the officer must make a snap judgment." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Here, a genuine dispute exists as to which standard should apply.  Crediting Plaintiffs' version of the incident, as the Court must at the summary judgment stage, the Court concludes that a rational jury could find that Downey had the luxury of deliberation.  As discussed above, a jury could conclude Herrera posed no threat of serious harm to Downey or others.  Further, Plaintiffs' evidence shows Downey was standing over a prone Herrera who was starting to pick himself off the ground to escape when Downey shot him without warning.  Downey could be found at least deliberately indifferent under these circumstances.  Indeed, even if a jury concluded Downey lacked time to deliberate, it could reasonably conclude he acted with purpose to harm.  Defendants' qualified immunity defense fails under the "clearly established right" prong as well for the same reasons it fails for Plaintiffs' excessive force claim.  The Court denies Defendants' motion as to Plaintiffs' substantive due process claim.

**D.   Monell**

Plaintiffs assert a claim for "Municipal Liability for Unconstitutional Custom, Practice, or Policy."  FAC at 1.  There is no vicarious liability under § 1983, Monell v. New York Dep't. of Social Serv., 436 U.S. 658, 694 (1978), but a local governmental entity may still be liable under § 1983 if (1) defendant's employee acted under color of law; (2) defendant's employee deprived plaintiffs of a constitutional right; (3) defendant's employee acted pursuant to an expressly adopted official policy or widespread or longstanding practice or custom of the defendant; (4) this policy, practice, or custom is so closely related to the deprivation of plaintiffs' rights as to be the moving force that caused the ultimate injury.  See Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit (2007 ed. updated 6/20/17) at Instruction 9.5.  Although the Court finds a triable issue as to the constitutional violation, Plaintiffs have failed to submit any evidence regarding any City custom, practice, or policy that would subject it to Monell liability.  Indeed, Plaintiffs do not even address this claim in their opposition.  Accordingly, there is no genuine dispute of material fact as to the remaining elements of Monell liability.  The Court grants summary judgment for Plaintiffs' Monell claim.

**E.   Battery**

Section 1983 has been described as the "federal counterpart of state battery or wrongful death actions," and the standard of reasonableness is the same.  Yount v. City of Sacramento, 43 Cal. 4th 885, 902 (2008).  For either claim, a plaintiff must prove the

## MEMORANDUM

officer used unreasonable force.  Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1274 (1998) (relying on section 1983 jurisprudence to determine burden of proof in battery cases).  Defendants contend Downey is immune from the state law claims under Penal Code section 196 and California Government Code section 820.2.

The same test applies in determining whether a defendant's conduct is justifiable under Penal Code section 196, or whether a defendant is immune under California Government Code section 820.2, namely "whether the circumstances reasonably create[d] a fear of death or serious bodily harm to the officer or to another."  Martinez v. County of Los Angeles, 47 Cal. App. 4th 334, 349 (1996) (internal quotation marks omitted).  The Court already determined that there was a genuine dispute of material fact regarding whether Downey's use of deadly force was excessive.  Thus, the Court rejects Defendants' state law immunity argument for the battery claim, as well as the negligence and Bane Act claims.  See Scruggs v. Haynes, 252 Cal. App. 2d 256, 267 (1967) ("[A] police officer does not have discretionary immunity from liability for the use of unreasonable force in making an arrest.").  Accordingly, Defendants' motion for summary judgment is denied with respect to Plaintiffs' battery claim. [8]

## F.  Negligence

"In order to establish negligence under California law, a plaintiff must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages."  Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003) (citing Martinez v. Pac. Bell, 225 Cal. App. 3d 1557 (1990)).  Police officers "have a duty to use reasonable care in employing deadly force."  Munoz v. City of Union City, 120 Cal. App. 4th 1077, 1101 (2004), disapproved on other grounds by Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 629 (2013).  Because there is a triable issue as to whether Downey used excessive force, there is a genuine dispute as to whether Downey breached the duty of care owed to Herrera.  See Young v. Cty. of L.A., 655 F.3d 1156, 1170 (9th Cir. 2011) (The "Fourth Amendment violation . . . also suffices to establish the breach of a duty of care under California law.").  The Court denies Defendants' motion as to Plaintiffs' negligence claim.

---

[8] The City may be vicariously liable under state law for Downey's purportedly excessive force.  See, e.g., California Government Code § 815.2(a); Blankenhorn v. City of Orange, 485 F.3d 463, 488 (9th Cir.2007).  Because the City would be liable for Plaintiffs' state law claims to the same extent as Downey, the claims against the City rise and fall with those against Downey.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

MEMORANDUM

**G.** **Bane Act**

Though the California Supreme Court has not resolved the question of whether a plaintiff asserting a Bane Act claim based solely on excessive force must present evidence of threats, intimidation, or coercion distinct from the excessive force claim, the Ninth Circuit has held that "the elements of [an] excessive force claim under § 52.1 are the same as under § 1983." Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013). Because Plaintiffs have raised a triable issue of fact as to whether Downey used excessive force, Defendants' motion is denied as to Plaintiffs' Bane Act claim.

**V. CONCLUSION**

Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.[9]

IT IS SO ORDERED.

---

[9] Defendants claim that Plaintiffs have agreed to limit their claims to Downey's use of deadly force - his shooting of Ruben Herrera. Notice of Mot. But the e-mails submitted by Defendants in support do not indicate whether Plaintiffs have so agreed. See Mot., Walsh Decl., Ex. 1. More importantly, in their opposition, Plaintiffs clearly argue that Downey's non-lethal force was also unlawful. Opp.at 1. The Court need not address such conduct because triable issues exist as to Plaintiffs' claims based on Downey's use of deadly force and Defendants provide no argument as to Downey's use of non-deadly force.